**UNITED STATES of America**
v.
**Kenneth SMITH, Defendant.**
No. 69 CR. 99.

United States District Court,
S. D. New York.

Sept. 11, 1969.

Robert M. Morgenthau, U. S. Atty., by Peter F. Rient, Asst. U. S. Atty., New York City, for plaintiff.

John P. Curley, Legal Aid Society, New York City, for defendant.

*Memorandum Opinion*

MOTLEY, District Judge.

Defendant was classified by his local draft board as a conscientious objector on June 14, 1966. He is charged in a one-count indictment filed February 3, 1969, with the offense of unlawfully and knowingly refusing to report to his local board for instructions to proceed to his assigned place of civilian work, in lieu of regular military service. 50 App. U.S.C. § 462(a); 32 C.F.R. 1660.30 The court finds defendant not guilty, as charged, for failure of the government to prove beyond a reasonable doubt that defendant knowingly, and with the requisite criminal intent, refused to obey the

orders of his local board with regard to performing alternative civilian work.

The central issue in this case is raised by defendant's categorical assertions, upon trial, that he never received the orders in question. His position is that he, therefore, cannot be found to have "knowingly and unlawfully" refused to obey an order from the board to report for assignment to civilian work. In essence, the point is that failure to comply with the order, by virtue of never having actual notice of it, is not here tinged with criminal intent. Hence, the defendant may not be convicted of any crime.

It is clear that

" * * * the criminal intent is an essential element of the offense proscribed by Section 462(a). This principle was firmly settled in United States v. Hoffman, 137 F.2d 416, 419 (2d Cir. 1943) and has been consistently recognized and applied. See, e. g., Silverman v. United States, 220 F.2d 36, 39–40 (8th Cir. 1955); Graves v. United States, 252 F.2d 878, 881–882 (9th Cir. 1958); Whitney v. United States, 328 F.2d 888, 889 (5th Cir. 1964)." [1] Smith v. United States, 391 F.2d 543, 545 (8th Cir. 1968).

However, the government contends that the question of criminal intent, conceded to be a necessary element of its case against defendant, is governed by 32 C.F.R. 1641.3. That regulation, it is urged, creates an irrebuttable presumption that defendant received the order,

upon the mere demonstration that the order was "sent" to defendant. Having had such "notice", *any* failure to report for assignment is proof of defendant's culpability under the present indictment.[2]

■ The government's interpretation of the regulation must be rejected out of hand. It would be truly shocking if such an "irrebuttable presumption," concerned with a simple evidentiary matter, could be constructed to send a man to jail. The government cited neither cases, nor administrative rulings, to support such a draconian reading of 32 C.F.R. 1641.3. To the contrary, the one case called to the court's attention by the government buttresses the view that the issue of receipt, is governed by a rebuttable presumption, and that doubt may be entertained in that regard.[3]

Thus, the task of this court in this case, as in all criminal cases, is to decide the question of defendant's criminal intent beyond a reasonable doubt. The primary evidence relevant to this determination is that concerning the several orders of the draft board that form the basis for this prosecution.

On June 21, 1967, a letter was sent to defendant Smith at 19 Barker Avenue, White Plains, New York, directing him to report for duty at St. Peter's Hospital, Albany, New York.[4] [Government's Exhibit #2, Document #79.] Smith flatly denied ever receiving such an order on questioning by counsel, and reiterated

---

1. In United States v. Hoffman, *supra*, a different section of the Selective Service Regulations was involved. However, the reasoning of *Hoffman* has been found by other courts, and is believed by this court, to control the situation here.

2. 32 C.F.R. 1641.3 provides:
   "It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. The mailing of any order, notice, or blank form by the local board shall constitute notice to him of the contents of the communication, whether he actually receives it or not."

3. " * * * [T]he critical issue of receipt of the conscientious objector forms was governed by a *rebuttable presumption*, viz., that mail sent is presumed to be received unless the jury believes the evidence to the contrary [.] * * * " United States v. Bowen, 414 F.2d 1268, 1272 (3rd Cir. 1969). (Emphasis supplied.)

4. As bearing on Smith's criminal intent to refuse to obey the orders of the board, it is noteworthy that he *had* complied with an earlier order to report for work at Hudson River State Hospital. [Government's Exhibit #2, Document #65]. Smith did so report, but was rejected by the hospital because of his unsatisfactory performance on personnel tests.

that denial under cross-examination. He did not report for work as ordered. The next letter sent to him was on August 9, 1968, at the same address, informing him that he had a continuing duty to comply with the order of June 21, 1967. Smith again denied receipt of the letter. It was returned to the board marked "moved," by the Post Office, because the Post Office was unable to deliver the letter to Smith at that address. [Government' Exhibit #2, Document #91.] The final letter in this series was sent to Smith on August 29, 1968, at 45 Traverse Avenue, Port Chester, New York. [Government's Exhibit #2, Document #93.] Smith did not respond, and once more, on trial, denied having received it. Upon Smith's non-compliance with this letter of August 29, this prosecution followed.

Smith testified that he lived at 45 Traverse Avenue at the time of, and prior to, the letter of August 29. However, he also testified that he lived there in a housing project, and that there was no "security" [guard] for the mailbox; that the mailbox was open and accessible to the public; that it had no lock; and that Smith had had mail "stolen" from the box before. [At this point, the court takes notice of the fact that mail is frequently stolen from receptacles in housing projects, as evidenced by the large number of welfare check embezzlers who are brought before this court, as a result of such pilfering.] Neither Smith's copious denials of his non-receipt of the three letters of the board, nor his sworn testimony as to the precarious nature of mail delivery at 45 Traverse Avenue, were directly controverted or rebutted by the government.[5]

On these facts, this court finds that the defendant has successfully raised a reasonable doubt as to whether he actually received the orders in question from his local board. The combination of Smith's denials, the undelivered letter, his testimony as to problems with receipt of mail at the housing project, and the absence of any government proof of receipt of the letters, beyond reliance on the dubious presumption of notice from a showing of mailing (stemming from 32 C.F.R. 1641.3), compels this court to find an absence of criminal intent on the part of defendant. The government has simply failed to discharge its burden of proof in convincing this court, beyond a reasonable doubt, that defendant received notice of the orders, and thus "knowingly" did not comply with them.[6]

The decision of this court need not rest alone on its doubt as to defendant's actual receipt of the board's orders. There is the antecedent technical matter as to whether 32 C.F.R. 1641.3 is applicable at all to the facts here. If the government has not complied with the letter of that regulation, there is not even a firm ground for a presumption of notice, rebuttable or irrebuttable. In that case, doubt as to defendant's "knowing" disobedience, and thus, criminal intent, would be immeasurably stronger.

5. As is indicated, *infra*, the government did attempt to impeach the credibility of the defendant by evidence as to successful communications of the board to him, at 19 Barker Avenue. In addition, a letter was introduced that tends to show a slightly "resistant" attitude on the part of defendant. [Government's Exhibit #2, Document #72.] However, the court does not find that this evidence impeaches Smith's credibility to a very great extent.

6. This Court does not declare that the government has an affirmative duty to prove receipt of such orders in the first instance. A requirement of that nature,

arguably, might impose an oppressive procedural burden upon the government in prosecution of Selective Service cases such as this one. It might fail to permit the "government to present its case in chief free of a technical nicety." United States v. Sandbank, 403 F.2d 38, 40 footnote (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562. What is decided here, is that after the defendant successfully raises the issue of receipt, or of notice, and presents a reasonable doubt as to that, the government must come forward and prove, beyond a reasonable doubt, that such receipt occurred.

Defendant registered with Local Board #11, White Plains, New York, on May 8, 1962. At that time, he gave the following information:

"2. Place of Residence
184 Grace Church Street
Port Chester, Westchester,
N. Y.

6. Name and Address of Person Who Will Always Know Your Address
Mrs. June Smith
184 Grace Church Street
Port Chester"

[Government's Exhibit #1.][7]

This was in conformity with the first part of 32 C.F.R. 1641.3, *supra*. Defendant never informed the board of any other address "where mail will reach him." Indeed, he filed a "Current Information Questionnaire" with the board in January, 1966, giving the same addresses as he did at the time of registration. [Government's Exhibit #2, Document #24.] It is true that Smith had received mail from the board at 19 Barker Avenue, White Plains, and seems to have used such a return address in some communications with the board. It is also true that an agent of the Federal Bureau of Investigation called as a witness by the government, Mr. John Foley, testified to an interview with defendant in April, 1968, outside his residence at 45 Traverse Avenue, Port Chester. A letter sent by the FBI to Local Board #11 on April 29, 1968, summarizing that interview, gave this residence as Smith's "present address." [Government's Exhibit #2, Document #89.][8] However, it remains that defendant never requested the board to send mail to any other address than that of his mother, 184 Grave Church Street.[9]

It also remains that *none* of the three orders from the board were sent to that address. No order having been sent to the registrant "at the address last reported by him to the local board,"[10] there

---

7. Defendant's Selective Service file, all of which was put into evidence by the govment, bears this typwritten legend on the cover:

"SMITH, Kenneth
184 Grace Church Street
Port Chester, Westchester, N.Y."

There seem to be faint, ink cross-out marks through the address. [Hereinafter, "file cover."]

8. That letter, written by John F. Malone, Assistant Director in Charge, states in part:

"Smith said that he had formerly resided at 19 Barker Avenue, White Plains, New York, and had moved over a year ago to 184 Grace Church Street, Port Chester, New York. He also advised that he was married on July 4, 1967 and moved on that date to his present address, 45 Traverse Avenue, Port Chester, New York."

Mr. Foley, who conducted the interview, testified ambiguously to part of this relation. Defendant Smith, equally ambiguously, suggested that he may have stayed in White Plains at times, but that he never lived there. The testimony, as a whole, is at best confused as to Smith's various movements and travels. But the fact stands that the 184 Grace Church Street address was never discredited by defendant to the board.

9. Defendant testified that after the interview with Mr. Foley, he visited Local Board #11 to find out why the FBI was interested in him, and what the problem with regard to his draft status was. He was directed to Mrs. Wennstrom, who told him the matter was "out of the hands" of the board, the testimony continues. Mrs. Wennstrom confirms that Smith came to speak to her, but can't remember whether it was prior or subsequent to the first letter of August, 1968.

This visit on defendant's part demonstrates some measure of good faith, tending to dilute any evidence of criminal intent on his part.

10. The file cover contains the following handwritten entries, under the heading, "Changes of Address,":

1. 19 Barker Ave., White Plains, N.Y., 3/15/66
2. 184 Grace Church St., Pt. Chester, N.Y., [n.d.]
3. 45 Traverse Ave., Pt. Chester, N. Y., 9/9/68 [Struck over] 8/9/68.

One can only wonder why the board waited until August, or September, 1968, to list the Traverse Avenue address, if, as the government contends, the board relied on the FBI report of April, 1968, for its information. It is also curious that although the board lists a "change"

appears to be at least a question whether communication to *other* addresses, "shall constitute notice to him \* \* \* whether he actually receives it or not." 32 C.F.R. 1641.3, *supra*.

There is also a question whether the government has laid a proper foundation as to the *mailing* of the orders, so that the "presumption" of the regulation may be invoked: "The *mailing* of any order \* \* \* shall constitute notice \* \* \*." (Emphasis supplied.) 32 C.F.R. 1641.3, *supra*. Mrs. Wennstrom, a government witness and Executive Secretary-Supervisor of Local Board #11, testified both on direct examination and on rebuttal, that the various orders were "sent" to defendant Smith. She signed only the letter of June 21, 1967; she did not sign the letters of August 9 and 29, 1968. She did not testify that she gave the letters to anyone to be mailed; nor that she saw the letters being mailed; nor that she knew of her own information that the letters had been mailed.

Of course, it is probable that Mrs. Wennstrom was employing the word "sent" to mean "mailed," in the ordinary usage of language. But this is not an ordinary proceeding—it is one to determine guilt or innocence of serious criminal conduct. Laxity in the creation of the framework for conviction of alleged offenders may not be excused. Furthermore, there is good authority in New York for the proposition that substantially more than that shown by the government is necessary to give rise to a presumption that a letter has in fact been mailed. [11]

Therefore, this Court is not convinced that 32 C.F.R. 1641.3 has been fully complied with in this case, and concludes that is should not be controlling here.

For this and for all other reasons previously stated, the defendant is found not guilty.[12]

of address to Grace Church Street antecedent to the Traverse Avenue address, as of August 9, 1968, the board was still addressing mail to 19 Barker Avenue. It appears that the Traverse Avenue address was only listed after the August 9 letter was returned, and the FBI report *then* consulted.

11. "It is necessary to show, however, that the letter in question was placed in the usual office receptacle for outgoing mail, and, in addition, to call as a witness the particular clerk whose duty it was to mail such letters and have him testify that he invariably mailed all letters found in said receptacle. No less than this amount of evidence as to office practice is deemed sufficient to justify the submission of the question of the mailing to the jury. Gardam & Son v. Batterson, 198 N.Y. 175, 91 N.E. 371; Stern Bros. & Co. v. Burnet, 51 F.2d 1042. See, Federal Asbestos Co. v. Zimmermann, 171 Wis. 594, 177 N.W. 881, 25 A.L.R. 5, for an excellent review of the authorities on proof of mailing letters." Richardson on Evidence, § 79, p. 55 (9th ed. 1964).

12. Of course, defendant Smith is still under a continuing duty to comply with a valid order of his local board. Therefore, he must comply with any order of the board which has been sent to him in due course, and of which, in fact, he has notice.