**UNITED STATES of America**

v.

**Lamount Maurice BELGRAVE,**
**Appellant.**

**No. 72–2169.**

United States Court of Appeals,
Third Circuit.

Argued June 11, 1973.

Decided Aug. 21, 1973.

Edward H. Weis, Defender Assn. of Philadelphia, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., James C. Sommar, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

■ This is an appeal from a judgment of sentence imposed after a verdict of guilty on an indictment charging that appellant Belgrave violated the Selective Service Act of 1967, 50 App. U.S.C. § 462, by knowingly failing to comply with a notice to report for an Armed Services physical examination on April 10, 1970. Appellant's first trial on the indictment resulted in a jury disagreement. At his retrial the Government's case consisted of introducing in evidence his selective service file and of establishing that he did not appear on April 10, 1970, at the place designated for the physical examination. Belgrave moved at the end of the Government's case for a judgment of acquittal. *See* Fed.R.Crim.P. 29. That motion was denied and the defense presented testimony. The motion for a judgment of acquittal was renewed at the end of the entire case, and after the jury verdict, and was in both instances denied, D.C., 351 F.Supp. 686. This court still adheres to the view that in considering an appeal from the denial of a motion for judgment of acquittal, if the defendant has presented testimony, we judge the sufficiency of the evidence by the entire case. United States v. Feldman, 425 F.2d 688, 692 (3d Cir. 1970).[1] Thus we must consider both the Government's evidence and that presented by Belgrave.

The selective service file contains a notation that on March 19, 1970, the local board mailed a notice, addressed to Belgrave at 413 Concord Avenue, Chester, Pennsylvania, directing him to re-

---

1. *Compare* this *with* United States v. Rizzo, 416 F.2d 734, 736 n.3 (7th Cir. 1969) ; Cephus v. United States, 117 U.S.App.D.C. 15, 324 F.2d 893 (1963). *See* Maffei v. United States, 406 U.S. 938, 92 S.Ct. 1789, 32 L.Ed.2d 138 (1972) (Douglas, J., dissenting from denial of certiorari) ; Comment, The Motion for Acquittal : A Neglected Safeguard, 70 Yale L.J. 1151 (1961).

port for a physical examination on April 10, 1970. This is the address furnished by Belgrave when he registered with the local board, and the file contains no other.[2] There was no other proof of mailing and no proof of return. Belgrave does not dispute that the selective service record, kept in the ordinary course of business, suffices to establish that the notice was regularly deposited with the U.S. Postal Service and was not returned to the sender.

When his motion for a judgment of acquittal was denied, Belgrave presented the testimony of his mother and his former wife. He testified on his own behalf as well. The defense testimony establishes, and the Government does not dispute, that in the spring of 1970 Belgrave was not living at 413 Concord Avenue. This was his mother's home, but he had married and was living with his wife at another address. His mother testified that Belgrave would visit her house no more than once a month. There was no testimony indicating that any such visit took place between March 19 and April 10. Belgrave testified that he never received the notice in question, although he had at other times received other mail from the Selective Service System at 413 Concord Avenue. His mother testified that she usually put mail addressed to her son on top of a china closet. Her testimony does not establish that the notice in question was actually received, was placed on the china closet, or was picked up by Belgrave. It establishes that younger children living at 413 Concord Avenue sometimes tampered with mail delivered there.

■■ This was the entire case. The indictment does not charge, the Government does not contend, and the district court did not rule that after mailing of the notice Belgrave became subject to a continuing duty to report for a physical examination. *Cf.* Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.

Ed.2d 156 (1970); United States v. Figurell, 462 F.2d 1080, 1082–83 n.5 (3d Cir. 1972). The Government concedes that it had the burden of establishing beyond a reasonable doubt that Belgrave received actual notice, prior to April 10, 1970, of the order to report on that date. *See, e.g.,* Fisher v. United States, 413 F.2d 1034 (9th Cir. 1969); Graves v. United States, 252 F.2d 878 (9th Cir. 1958). It concedes, too, that there is no irrebuttable presumption of notice to the registrant from mailing of the notice. United States v. Bowen, 414 F.2d 1268 (3d Cir. 1969); United States v. Simmons, 476 F.2d 33 (9th Cir. 1973); United States v. Smith, 308 F.Supp. 1262, 1263 (S.D.N.Y.1969). The question, then, is whether proof of regular mailing and nonreturn to an address at which the defendant at the critical time was not residing suffices to sustain the Government's burden.

■ No doubt the jury could properly infer that the notice did in fact arrive at 413 Concord Avenue within a day or so after March 19, 1970. *See, e.g.,* Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Lee, 458 F.2d 32 (9th Cir. 1972) (per curiam). Perhaps, construing the testimony of Belgrave's mother in a manner most favorable to the Government, the jury could add to the inference of due receipt at 413 Concord Avenue the evidence of her practice of placing Belgrave's mail on the china closet, and infer that the letter reached the top of the china closet. At this point, however, there is a gap, for if the notice never got from the top of the china closet to Belgrave before April 10, 1970, then Belgrave could not wilfully have ignored an order to report for a physical examination on that date. And, of course, the burden of proving such wilfulness remained on the Government throughout the case.

Belgrave's own testimony furnishes some evidence from which the jury could

---

2. Belgrave was not charged with failing to keep the local board informed of his current address.

find that on some occasions after he moved from 413 Concord Avenue he returned there and picked up mail from the top of the china closet. His testimony might even be stretched to the point of suggesting that it was his practice, when he visited 413 Concord Avenue, to pick up his mail from the top of the china closet. If there was any evidence that between March 20 and April 9, 1970 he visited that address the jury possibly might have been able to infer that he followed that regular practice. Possibly then the jury could add together the inference of due receipt, the inference that Belgrave's mother followed her regular practice, and the inference Belgrave followed his regular practice, and conclude on the basis of these triple inferences that Belgrave received the notice. We need not here decide whether such a group of inferences would suffice to carry the Government's burden of proof of notice beyond a reasonable doubt, because in this case the factual predicate for the third of the necessary inferences simply is not present. There is no evidence from which the jury could find as a fact that in the critical time period Belgrave visited 413 Concord Avenue. There is no evidence that in the critical time period the notice could have come to his attention in any other way. On the evidence in the record the Government has moved the notice only to the top of the china closet in a dwelling at which the defendant did not reside.

 In United States v. Bowen, *supra*, we held that it was error to charge the jury, in the language of 32 C.F.R. § 1641.3, that the mailing of a notice to the address last reported by the registrant to the local board created not only a rebuttable presumption of receipt of the notice at that address but also an irrebuttable presumption of notice to the registrant. Recently the Ninth Circuit, following *Bowen*, pointed out that it violates due process of law to bootstrap mailing into receipt and receipt into notice. United States v. Simmons, *supra*. Both the *Bowen* and the *Simmons* cases involved a jury charge which permitted such bootstrapping, and which in effect relieved the Government of the duty of proving wilfulness beyond a reasonable doubt. In this case the court's charge complied with *Bowen* to the extent that the jury was told the Government had to establish that Belgrave actually received the notice. But the vice of the charge condemned in *Bowen* and *Simmons* was that it permitted the jury to convict the defendant where there may have been no probative evidence to support a factual inference that is an essential element of the Government's case. If a defendant cannot be convicted on such an erroneous charge, *a fortiori* he cannot be convicted where the record contains no evidence, probative or otherwise, on the same essential element. The fact that a correct *Bowen* charge was given cannot supply the missing evidence.

When, after the verdict, Belgrave once again renewed his motion for a judgment of acquittal, the district court developed an ingenious but insufficient theory to fill the gap between the top of the china closet and the defendant. That gap was filled, the court reasoned, by Belgrave's denial that he received the notice at all. Since the jury convicted, it must have disbelieved this denial. Such disbelief suffices to establish that he did in fact receive the notice prior to April 10, 1970.

 We think not. As the court's charge makes clear, it was never disputed, once Belgrave's mother and wife testified, that he was not living at 413 Concord Avenue in the spring of 1970. Setting aside the question whether in its own case, in order to prove a prima facie case, the Government had to establish that between March 19 and April 10 he was still living at the address shown in the selective service file, once the evidence, from whatever source, established that the notice was mailed to an address at which Belgrave did not reside, the burden of proving beyond a reasonable doubt that he received it returned to (if it had ever left) the Government. As the district court suggests, the jury was free to disbelieve Belgrave's uncontra-

dicted and unimpeached testimony. But Belgrave had no burden of proof, while the Government did. The effect of the district court's ingenuity was to shift to Belgrave the burden of proving that he did not receive the notice, of convincing the jury to that effect, and to relieve the Government of the burden of proving that he did receive it.

The motion for a judgment of acquittal should have been granted. The judgment of the district court will be reversed.