**UNITED STATES of America**
v.
**Patrick Ross YINGLING.**
**Crim. A. No. 73–275.**

United States District Court,
W. D. Pennsylvania.
Dec. 20, 1973.

David Curry, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Michael P. Malakoff, Pittsburgh, Pa., for defendant.

## OPINION AND DECREE

SNYDER, District Judge.

The defendant in this proceeding has filed a Motion to Dismiss, a Motion for Bill of Particulars, and a Motion for Discovery. These matters will be discussed and disposed of in that order. At the outset it is necessary to state that the Motion to Dismiss must be denied.

The Indictment in this case charges that on or about the twelfth day of March, 1970, the defendant being a registrant under the Military Selective Service Act of 1967, wilfully and knowingly failed to perform the duty required of him by the Act and the regulations and directions issued pursuant thereto to keep his local draft board advised of his correct and current address,

in violation of Title 50 Appendix, United States Code, § 462(a).[1]

The Indictment was returned on October 16, 1973. The defendant plead Not Guilty and then filed the Motions as hereinabove set forth.

Through court appointed counsel, the defendant outlined as the basis of the Motion to Dismiss that he was the victim of selective, intentional and discriminatory prosecution in violation of defendant's right to equal protection of the law. It was further stated in the motion, and admitted by the Government, that about June 10, 1970, an indictment was returned by the Grand Jury charging this same defendant with failing to comply with an order of his local draft board to report for, and submit to, an armed forces physical examination. About October 16, 1973 the Government elected not to pursue the Indictment of April 16, 1973 and the United States Attorney informed this Court at the argument that the reason therefore was due to the recent decision of the Third Circuit in United States v. Belgrave, 484 F.2d 915 (3rd Cir. filed August 21, 1973). The holding of the *Belgrave* case is that the Government must be able to establish proof of actual delivery of the order of the local board to report for, and submit to, an armed forces physical examination. The Government could not prove such actual delivery in the Indictment at Criminal No. 70–177, although the order to report for physical examination was addressed to Yingling's home and had not been returned; the Government then elected not to prosecute that case further. Instead, on October 16, 1973, the Government sought and secured a True Bill on the offense of failing and neglecting to keep his local draft board advised of his

---

1. Title 50 Appendix, U.S.C. § 462(a) reads as follows:

"Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty, and any person charged with such duty, or having and exercising any authority under said title [said sections], rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making, of any false statement or certificate regarding or bearing upon a classification or in support of any request for a particular classification, for service under the provisions of this title [said sections], or rules, regulations, or directions made pursuant thereto, or who otherwise evades or refuses registration or service in the armed forces or any of the requirements of this title [said sections], or who knowingly counsels, aids, or abets another to refuse or evade registration or service in the armed forces or any of the requirements of this title [said sections], or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title [said sections], or rules, regulations, or directions made pursuant to this title [said sections], or any person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title [said sections] or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses, shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment, or if subject to military or naval law may be tried by court martial, and, on conviction, shall suffer such punishment as a court martial may direct. No person shall be tried by court martial in any case arising under this title [said sections] unless such person has been actually inducted for the training and service prescribed under this title [said sections] or unless he is subject to trial by court martial under laws in force prior to the enactment of this title [June 24, 1948]. Precedence shall be given by courts to the trial of cases arising under this title, and such cases shall be advanced on the docket for immediate hearing, and an appeal from the decision or decree of any United States district court or United States court of appeals shall take precedence over all other cases pending before the court to which the case has been referred."

correct and current address. A hearing was held on the Motion to Dismiss, as well as the other motions, on November 20, 1973 at which time the above facts were stipulated.

The same attorney who represented the defendant on the previous indictment, and convinced the Government of the weakness of its position under the *Belgrave* decision, now suggests that this Court should dismiss the present indictment because the defendant is a victim of selective, intentional and discriminatory prosecution since the Government had knowledge in March of 1970 of the acts which form the basis of the second indictment and did not indict the defendant for failing to keep his local board informed of his correct and current address until almost four years later; the defendant was indicted at the subsequent indictment solely because he successfully "defended the indictment at Criminal No. 70–177, and thereby exercised his Fifth and Sixth Amendment rights" (It must be pointed out that this contention is made even though the Government dropped the first indictment.); that the defendant is being unconstitutionally penalized for his willingness and ability to present a defense to the indictment at Criminal No. 70–177; that the Government presently has knowledge of many registrants whose only offense is that they failed to notify their local boards of their correct and current addresses, and that these registrants are not subject to prosecution in that the Government has an avowed policy of not indicting registrants for only "minor infractions" of the Military Selective Service Act of 1967; that the Government presently has knowledge of many registrants who are identically situated (except for the fact that the defendant has attempted to defend himself against the prosecution brought by the Government) and who failed to keep their local boards informed of their correct and current addresses but are not subject to prosecution in that the Government has an avowed policy of not indicting registrants for these minor infractions; that the Government is attempting to punish and stifle the defendant's Fifth and Sixth Amendment rights to defend himself, by indicting him for failure to keep his local board informed of his correct and current address solely because of his willingness and ability to present a defense to the Indictment at No. 70–177 and; that the defendant would not have been indicted at Criminal No. 73–275 (the current Indictment) except for the fact that he presented a defense to the Indictment at Criminal No. 70–177.

In addition, it is alleged that the defendant has been denied equal protection of the law in that "the Military Selective Service Act of 1967, as amended, requires that only males, not females, to keep the local board informed of their current and correct address."

The contentions of the defendant's counsel were set forth at some length in order to illustrate the unusual nature of the contentions and to show clearly why they must be dismissed.

## SELECTIVE PROSECUTION

The Fourteenth Amendment prohibits any State from taking an action which would "deny to any person within its jurisdiction the equal protection of the laws." This prohibition is applicable to the Federal Government through the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 922 (1968). As early as Yick Wo v. Hopkins, 118 U.S. 356, 373–374, 6 S.Ct. 1064, 1073, 30 L.Ed. 220 (1886), it has been recognized that the promise of equal protection of the laws not only means the enactment of fair and impartial legislation, but also extends to the application of these laws. In addition, the underlying principle is certainly applicable to the actions of prosecutors and police officials. Two Guys from Harrison-Allentown v. McGinley, 366 U.S. 582, 588, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); Shock v. Tester, 405 F.2d 852, 855 (8th Cir. 1969); Moss v. Hornig, 314 F.2d 89, 92–93 (2nd Cir. 1963).

While there is some indication that in Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962) that, at least, selection based upon an unjustifiable standard such as race, religion, or other arbitrary classification, would be a basis for federal constitutional violation, this Court is also of the opinion that *Oyler* does not preclude the granting of relief if there is intentional or purposeful discrimination against an individual. Cf. Furman v. Georgia, 408 U.S. 238, 257, 293, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

In the instant case, it is noted that the primary contention of the defendant seems to be that he presently stands indicted because he successfully defended a previous indictment and is now being additionally penalized for his willingness and ability to present a defense to the former indictment. However, the only basis for such a charge apparently is that the Government had a policy of not indicting registrants for minor infractions, such as failure to keep the board informed. It is interesting to note that the defendant's counsel indicates the very reason why prosecutions of this type occur, even if now commenced for the first time as the defendant alleges, is because of the effect of the *Belgrave* decision. Therefore, this Court is of the opinion that even if all of the facts were proven as set forth by the defendant, his motion would still be denied.

It is also interesting that the defendant places great stress on the case of United States v. Falk, 479 F.2d 616 (7th Cir. 1973). It would seem to this Court that the reliance on this case is completely misplaced. Circuit Judge Sprecher, speaking for the majority of the Court en Banc held that (Page 620):

"The presumption is always that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice."

In that case the defendant introduced a policy statement of Lieutenant General Louis B. Hershey, Director, Selective Service System, which in effect said that registrants who turned in cards (as contrasted to those who burned draft cards) were not to be prosecuted under Section 12(a) of the Military Selective Service Act of 1967, but were to be processed administratively by local draft boards. In light of this the Court felt that there was a burden on the prosecution to come forward with the evidence that it had, in fact, changed its policy generally or otherwise to explain why Falk was being singled out for prosecution in contravention of the Government's own procedures. However, in the instant case the particular circumstances certainly do not place the burden on the Government of proving non-discriminatory enforcement of the law. There is no indication in this case, for example, as there was in *Falk*, that the defendant here chooses to assert a right as a conscientious objector, or by reason of such assertions took certain conduct with respect to the draft regulations. In the *Falk* case, it was only the combination of the published policy not to prosecute violators of the card possession regulations, Falk's status as an active and vocal dissenter to the United States' policy with regard to the draft and the Vietnam War, and the Assistant United States Attorney's statement that officials ranging from the First Assistant Attorney to the Department of Justice in Washington participated in the decision to prosecute Falk, the untimely delay in bringing the indictment and the government's stated policy to prosecute only those who refused induction while absolving those who submit to the will of the authority, along with the fact that Falk was found to have been justified in refusing induction in that he was entitled to classification as a conscientious objector, led the Court in the *Falk* case to conclude that the District Court

had erred in refusing hearing on the offer of proof.

■ We have also considered the case of United States v. Crowthers, 456 F.2d 1074 (4th Cir. 1972) and United States v. Steele, 461 F.2d 1148 (9th Cir. 1972), and find them equally unpersuasive. The common requirement running through these decisions was an allegation and a showing that the effect of the administrative or prosecutive policy was a division between persons otherwise similarly situated according to whether or not they possessed certain characteristics. Unless the impact or effect of Government action is to discriminate between persons or classes according to an impermissible selection, no denial of equal protection can be made out. Palmer v. Thompson, 403 U.S. 217, 91 S.Ct. 1940, 29 L.Ed.2d 438. In the instant case we do not believe the defendant's contention with respect to the policy of not prosecuting these "minor offenses" is the type of an allegation sufficient to raise the constitutional question or permit the defendant to have an evidentiary hearing thereon.

■ Nor do we find any suspicious delay as alleged by the defendant. The dismissal of the previous indictment, and the finding of the new indictment were almost simultaneous. Certainly in light of the entire situation, a prosecutor cannot be faulted for seeking to indict the defendant for all violations he is believed to have committed. It is his duty to secure compliance through prosecution of those who do defiantly violate the law and to subject a prosecutor's determination to scrutiny on the propriety of the motivation toward the defendant as an individual is to go beyond the proper scope of judicial review.

## MILITARY SELECTIVE SERVICE ACT OF 1967

■ The Defendant in this case further raises the contention that he has been denied equal protection of the law in that the Military Selective Service Act of 1967, as amended, required only males, not females, to keep the local board informed of their correct and current address.

Our approach to the problem here presented is set in excellent perspective by an opinion of Chief Judge Marsh of this District in United States v. Dorris, 319 F.Supp. 1306 (W.D.Pa.1970). In that case, the defendant was indicted by the Grand Jury for refusing to report for and submit to induction into the Armed Forces of the United States in violation of the Military Selective Service Act of 1967 (the Act), 50 U.S.C.A. App. § 462(a). The defendant filed a Motion to Dismiss based inter alia on the contention that the Act deprived the defendant of his liberty without equal protection of the law contrary to the Constitution of the United States. The Court dismissed the defendant's motion and set forth therein as follows (Page 1307):

"Congress has power to classify and conscript manpower for military service, and this is 'beyond question'. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). It is fundamental, however, that the constitutional provision of due process is a limitation on Congress' war powers. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 164, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The defendant's assertion that the Act discriminates against males who are older than 18½ years of age and younger than 26 years of age and is therefore invidiously discriminatory, is without merit.

The defendant overlooks the fact that the group of males 18½ to 26 years of age is not stagnant. The people who make up the group today, will not always remain in that group. Males today who are 17 years old will be subject to the draft when they reach 18½ years of age. Men today who are 27 and older, either have been in the service or have had a deferment. Therefore, the class is never closed, but the Act is designed to

eventually submit *all male* citizens to the draft.

The assertion that the Act is invidiously discriminatory because it excepts females *in toto*, is unfounded.

'Traditionally, the test for whether a classification satisfied equal protection is whether there is a "reasonable basis" for it. \* \* \* However, where a "fundamental right" is involved, the constitutionality of the classification "must be judged by the stricter standard of whether is promotes a *compelling* \* \* \* [government] interest." Shapiro v. Thompson, 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600 (1968).' Napper v. Wyman, 305 F.Supp. 429, 431 (S.D.N.Y. 1969). (Italics in original.)

In deciding the compelling interest of the government, it is well to keep in mind the words of Justice Goldberg:

'The powers of Congress to require military service for the common defense are broad and far-reaching, for while the Constitution protects against invasions of individual rights, it is not a suicide pact.' Kennedy v. Mendoza-Martinez, *supra*, 372 U.S. at 159–160, 83 S.Ct. at 563.

Such classifications as age and sex are not arbitrary or unreasonable, and the classifications are justified by the compelling government interest which is to 'provide for the common defense' in a manner ' \* \* \* which would both maximize the efficiency and minimize the expense of raising an army \* \* \* '. United States v. Fallon, 407 F.2d 621, 623 (7th Cir. 1969).

We, therefore, hold that such classifications in the Military Selective Service Act are not violative of the due process clause of the Fifth Amendment of the United States Constitution, and the defendant's motion to dismiss the indictment will be denied."

The defendant through his counsel at the argument and in the briefs filed, does not have any disagreement with the cogent reasoning behind the Court's opinion but argues the Supreme Court decisions in Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971) and its decision in Frontiero v. Laird, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1972). The reliance on these cases as changing the law as set out in the opinion of Chief Judge Marsh above is entirely misplaced.

The substance of *Frontiero* is very succinctly stated in the opinion (411 U. S. at page 690, 93 S.Ct. at page 1772) as follows:

"Any statutory scheme which draws a sharp line between the sexes, soley for the purpose of achieving administrative convenience necessarily commands 'dissimilar treatment for men and women who are \* \* \* similarly situated' and therefore involves the 'very kind of arbitrary legislative choice forbidden by the (Constitution) . . . .' Reed v. Reed, 404 U.S. 76 at page 77, 92 S.Ct. 251, 30 L.Ed.2d 225. We therefore conclude that, by according differential treatment to male and female members of the uniformed services for the sole purpose of achieving administrative convenience, the challenged statutes violate the Due Process Clause of the Fifth Amendment insofar as they require a female member to prove the dependency of her husband."

Thus, *Frontiero* stands for the proposition only that the administrative convenience is not sufficient to bring about classification on a sex basis where such convenience is the sole basis. It is certainly not persuasive in the instant situation at all.

In *Reed*, which involved legislation favoring men as administrators of estates, the Court held that classification based on sex did not rest upon any ground "of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." 404 U.S. at 76, 92 S.Ct. at 254.

Judge Rosenberg of this Court in ruling on the issue of discrimination of the Military Selective Service Act in that it is applicable only to males and excludes females from compulsory military service held in the case of United States v. Cook, 311 F.Supp. 618 (W.D.Pa.1970) at 621–622:

"The Court in United States v. St. Clair, 291 F.Supp. 122 (S.D.1968) considered the question regarding sex discrimination within the provisions of the Act, and held that:

'In the Act and its predecessors, Congress made a legislative judgment that men should be subject to involuntary induction but that women, presumably because they are "still regarded as the center of the home and family life" * * * should not. Women may constitutionally be afforded "special recognition" (cf. Gruenwald v. Gardner, 390 F.2d 591, 592 (2d Cir. 1968), particularly since women are not excluded from service in the Armed Forces.' 291 F.Supp., at 124–125.

'In providing for involuntary service for men and voluntary service for women, Congress followed the teachings of history that if a nation is to survive, men must provide the first line of defense while women keep the home fires burning. Moreover, Congress recognized that in modern times there are certain duties in the Armed Forces which may be performed by women volunteers. For these reasons, the distinction between men and women with respect to service in the Armed Forces is not arbitrary, unreasonable or capricious.' United States v. St. Clair, supra, at page 125. See also, Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937).

If the contention of the defendant is that there is no valid basis to differentiate between men and women because modern times have legislated for the equality of the rights of all people without regard to sex, and if modern thinking is to equalize the status of men and women in every respect possible, including styles of clothing and headdress, this would not itself remove the physical characteristics which differentiate the sexes. As they are born so they are created and no amount of legislation or 'modernization' will change their distinguishing and distinctive physical characteristics. While each of the sexes has its own innate characteristics, for the most part physical strength is a male characteristic, and so long as this is so, the United States will be compelled to establish and maintain armed forces of males which may at least physically be equal to the armed forces of other nations; likewise composed of males, with which it must compete.

The power of Congress to promulgate a selective service system does not arise from the existence of a war or a national emergency, but rather from the power granted to Congress in Article I, Section 8 of the Constitution 'to raise and support Armies * * * to provide and maintain a Navy.' United States v. Hogans, 369 F.2d 359, C.A.2, 1966. Inherent in this power to raise and maintain armed forces is the power, vested in Congress, to determine who shall be required to serve in these forces, and in what way such a person's service requirements shall be fulfilled. United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302 (1931).

It is therefore obvious that in the exercise of its power to raise and maintain armed forces, Congress has the implicit power to determine the criteria by which those are designated and called to the service of their country. For this reason, the contention of the defendant that the Act violates his Constitutional rights under the Fifth Amendment is likewise without merit . . . ."

387

For the reasons above set forth, we do not see any reason whatsoever to sustain the defendant's Motion to Dismiss and the same shall be denied. See also United States v. Bertram, 477 F.2d 1329 (10th Cir. 1973); United States v. Camara, 451 F.2d 1122, 1126 (1st Cir. 1971) cert. denied 405 U.S. 1074, 92 S. Ct. 1513, 31 L.Ed.2d 808 (1972); United States v. Clinton, 310 F.Supp. 333 (E. D.La.1970).

Since the United States has filed Answers on November 15, 1973 and December 5, 1973, to the Defendant's Motion for Bill of Particulars and Motion for Discovery, and since the Answers present a responsive pleading to each Motion as to the information sought by the Defendant, the Court need not consider these Motions any further.

An appropriate order will be entered.