In re AMERICAN BIOCULTURE, INC.,
a New York Corporation, Bankrupt.

**FIRST MISSISSIPPI CORPORATION,**
Plaintiff–Appellant,

v.

Jon VOGEL, Trustee,
Defendant–Appellee.

No. 78–1606.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1980.

Decided Oct. 31, 1980.

Redfield T. Baum, Rawlins, Ellis, Burrus & Kiewit, Phoenix, Ariz., argued for plaintiff–appellant; James M. Marlar, Phoenix, Ariz., on brief.

David L. Haga, Jones, Teliborg, Sanders, Haga & Parks, Phoenix, Ariz., for defendant–appellee.

Before GOODWIN and SKOPIL, Circuit Judges, and WILKINS,* District Judge.

WILKINS, District Judge.

First Mississippi Corporation appeals from the judgment determining that the sale of certain foreign patents by American Bioculture, Inc. was free and clear of a lien in favor of First Mississippi. This sale occurred prior to the adjudication of American Bioculture as a bankrupt.

In the months preceding its bankruptcy, American Bioculture was involved in both Chapter X and Chapter XI proceedings in Bankruptcy Court during which the Court determined Appellant, First Mississippi, to be a secured creditor in that First Mississippi had loaned American Bioculture $300,-000.00. All United States Patents, the United States Patent Application, and "all designs, know–how and technology relating to or arising out of the foregoing Patents and Patent Application" owned by American Bioculture were collateral for this loan. Additionally, the Bankruptcy Court permitted a sale of all foreign patents and patent applications together with the attendant technology and know–how to Algae Prod-

---

* Honorable Philip C. Wilkins, Chief United States District Judge for the Eastern District of   California, sitting by designation.

it mailed appropriate delinquency notices to defendant at both the California and London addresses on February 3, 1966. The notice mailed to London was returned to the board on April 13, 1966 marked "Unclaimed-Not known".

On March 23, 1966 the board sent tracer letters to defendant's mother and his grandmother, Lillian Wilson, who had been listed by the defendant as the person who would always know his address. Mrs. Wilson responded March 28, 1966, by stating that she had not seen or heard from the defendant in about a year and she gave the last address for the defendant known to her as 1350 St. Nicholas Avenue, Bronx, New York. On March 30 the board directed a letter to defendant at the address provided by Mrs. Wilson, but this mailing was returned on April 4, 1966 marked "No such number". The board then sent a letter to defendant at the original address furnished by him, 1370 St. Nicholas Avenue, on April 7, 1966. This letter was returned "Moved. Left No Address." on April 11. In the interim, on April 8, the board received a response to its tracer letter from defendant's mother which stated that she had not heard from him since November 1965 and that she did not know his present whereabouts. She suggested that the board again try to reach him at the London American Express office.

██ Thereafter, on April 12, 1966, the local board mailed a notice of induction for April 25, 1966 to the defendant in San Francisco. This notice was neither returned nor acknowledged.[6] Defendant did not report on April 25 and on May 12 the local board reported defendant to the United States Attorney as a Selective Service violator.

An F. B. I. investigation was subsequently instituted to locate and apprehend the defendant. "Leads" were sent to numerous cities and countries and, at one point, defendant was located in Canada. In March 1969 the F. B. I. was informed that defendant was expected to arrive on an Air Canada flight at Kennedy Airport and they requested that the Port Authority Police apprehend him. Defendant was, however, able to escape capture when he fled across the air-field. As a result of the continued F. B. I. investigation defendant was again located, in October 1973, in Blytheville, Arkansas, using the assumed name of Eddie Watts, Jr. He was arrested on October 5, 1973 by the local police and was, thereafter, returned to New York for trial, by the F. B. I.

## DISCUSSION

The regulation, 32 C.F.R. § 1641.3, places a duty upon a registrant to keep his local board advised of an address where mail will reach him and the statute, 50 U.S.C. App. § 462(a), makes a registrant's knowing failure, neglect or refusal to comply with the regulation a crime.

██ The statute and the regulation do not require a registrant to report his every move to the board, but do impose a continuing obligation to keep the local board advised of a "good" current address. United States v. Read, 443 F.2d 842, 844 (5 Cir.), cert. denied, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971); Kokotan v. United States, 408 F.2d 1134, 1137 (10 Cir. 1969). The address furnished to the board must be one where defendant genuinely intends to call for his mail at reasonable intervals. United States v. Haug, 150 F.2d 911 (2 Cir. 1945). The regulation is satisfied "when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished to the board, may be, by the registrant reasonably expected to come into his hands in time for compliance." Bartchy v. United States, 319 U.S. 484, 489, 63 S.Ct. 1206,

---

6. The ancient presumption that a letter properly addressed, stamped (franked) and mailed was delivered to the addressee in due course of the mail should be noted here. Richardson on Evidence § 79, at 55 (9th ed., Prince 1964). The other evidence in this case, however, weakens any presumption that defendant actually received this notice personally to almost a nullity.

1208, 87 L.Ed. 1534 (1943). *See also,* United States v. Secoy, 481 F.2d 225 (6 Cir. 1973); United States v. Ebey, 424 F.2d 376, 377 (10 Cir. 1970).

■ Defendant has failed to meet these requirements. Upon his departure for Europe he furnished the local board with two addresses: that of his mother in San Francisco and the American Express Office, London. The American Express address was a dead letter box; all mail sent there by the board was returned "Unclaimed-Not Known". The San Francisco address was little more. Mail there addressed, was either returned by defendant's mother together with a statement of her lack of knowledge of his whereabouts or neither returned, nor acknowledged. At neither address could defendant have reasonably expected mail to reach him in time for compliance with his Selective Service obligations nor did he call for his mail at either location at regular intervals. The San Francisco address did not satisfy the regulation because his mother was unable to contact him or forward to him the mail there received. The London letters were not deliverable because he was not in London at regular intervals to pick them up. It is an unavoidable conclusion that, on the facts of this case, the defendant failed to keep his local board advised of an address where mail would reach him.

■ ■ The simple failure of the defendant to keep his local board so advised would not, of itself, be a crime. The statute, 50 U.S.C. App. § 462(a), requires that the defendant's non-compliance was knowing; the requisite mental element of the offense. The Supreme Court has held that a defendant acts knowingly when it is shown "[that] there was deliberate purpose on the part of the [defendant] not to comply with . . . the regulation." Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), reversing per curiam, 195 F.2d 441 (5 Cir. 1952). The court finds defendant to have acted with such deliberate purpose.

■ It is clear that defendant had adequate notice of his duty to keep the board informed of an address where mail would reach him. Such notice is plainly demonstrated by his receipt of numerous Selective Service documents which explicitly warned him of his obligation to keep the board so informed.[7] Additionally, defendant's previous compliance with the regulation, his informing the board of the change in his address to New Jersey and, later, to San Francisco and London, evidences his knowledge of the obligation imposed. Defendant's knowing non-compliance, guilty intent, is further evidenced by the inability of his mother, who resided at one address given by him, to furnish any information concerning his whereabouts, United States v. Buckley, 452 F.2d 1088 (9 Cir. 1971); United States v. Booth, 454 F.2d 318, 322 (6 Cir. 1972); United States v. Williams, 378 F.Supp. 159 (S.D.N.Y.1973) (MacMahon, D. J.), and by the fact that his grandmother, the person who had been listed by defendant as always knowing his address, could not provide a "good" address for him. Kokotan v. United States, *supra,* 408 F.2d at 1137; United States v. Booth, *supra,* 454 F.2d at 322; *cf.,* United States v. Chudy, 474 F.2d 1069, 1070–1071 (9 Cir. 1973); United States v. Burton, 472 F.2d 757, 762–763 and fn. 6 (8 Cir. 1973). The return of the letters sent to London, unclaimed, also demonstrates the knowing character of defendant's non-compliance. The regulation is violated when a registrant no longer calls for mail at an address which

7. *See,* p. 640, *supra.* The notice contained in these documents is sufficient notice to the defendant of his obligations to the board. United States v. Buckley, 452 F.2d 1088 (9 Cir. 1971); United States v. Deans, 436 F.2d 596, 601 (3 Cir. 1971); Carson v. United States, 411 F.2d 631, 634 (5 Cir.), cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119 (1969); United States v. Jones, 384 F.2d 781, 783 (8 Cir. 1967); United States v. Capson, 347 F.2d 959, 963 (10 Cir.), cert. denied, 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965).

he has furnished to the board. United States v. Haug, *supra*, 150 F.2d at 914.[8] It is overwhelmingly clear on the evidence that defendant was aware of his obligation to the board and deliberately refrained from performing it; this is sufficient evidence to support a finding of guilt, United States v. Secoy, *supra*; United States v. Mostafavi-Kashani, 469 F.2d 224 (9 Cir. 1972); United States v. Booth, *supra*, without other proof of specific intent or other corrupt or wicked motive. United States v. Wood, 446 F.2d 505, 507 (9 Cir. 1971); United States v. Couming, 445 F.2d 555, 557 (1 Cir. 1971).

■ The defendant has advanced two principal arguments or justifications in his defense.[9] His first contention is that a conviction is not here warranted because the local board failed to make all reasonable attempts to reach him at the London address that he had given. He states that although the board sent all relevant mailings to the San Francisco address, it made an inadequate attempt to contact him in London. Defendant asserts that one mailing to London was insufficient under *Haug* and *Ward* and he relies on United States v. Smith, 308 F.Supp. 1262 (S.D.N.Y. 1969). Initially, the court indicates that this position is premised upon a faulty review of the evidence: that only one mailing to London occurred,[10] when in fact there were two.[11] Additionally, the *Smith* case is clearly distinguishable on its facts from the instant matter. In *Smith* proof was adduced to show previous thefts from the mailboxes in question and Judge Motley took judicial notice of frequent mail thefts in housing projects. On those facts the court was unable to conclude beyond a reasonable doubt that defendant had received the notice in question. Here, the defendant asserts, without a shred of evidence to support his position, that because the American Express office in London handles thousands of letters, the letter (or, properly, letters) mailed by the board to him could well have been misdelivered or never delivered at all, thereby not affording him an opportunity to comply. Such pure speculation is not a substitute for proof.[12]

■ Additionally, the court finds that it was not unreasonable for the board, after twice mailing to the defendant in London and twice having the letters returned as "Unclaimed-Not known", to cease attempting to communicate with him at that address. The efforts of the board were sufficient; it was not required to proceed with an exercise in futility. *See, e. g.,* United States v. Booth, *supra*. ·

■ · Defendant's final argument, asserted vigorously at trial, is premised upon the Supreme Court decision in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). In *Gutknecht* the court held invalid the selective service procedure of declaring a registrant delinquent in his obligations and, thereafter, accelerating his induction. Defendant contends that since the board invoked this invalid practice in his case he should now be acquitted because the instant prosecution is not brought in good faith and because his fear of arrest or immediate induction under the illegal induction order caused him to refrain from informing the board of his whereabouts.

This position is entirely without merit and must be rejected. The action of the

8. Additional evidence of the deliberate nature of defendant's conduct can be inferred from his flight, his hiding out and his use of aliases. This evidence is, however, entitled to little weight and is not needed to sustain a conviction on the other facts of the case.

9. The defendant also asserts that the government has not proved that he acted with a deliberate purpose as required by the *Ward* case. This contention has already been addressed by the court. *Supra*, pp. 642–643.

10. Defendant's Brief, p. 6.

11. *See*, p. 640, *supra*.

12. Indeed, it was the defendant, and not the board, that caused the mailings to be made to the American Express office, London.

local board in declaring the defendant delinquent and accelerating his induction call is plainly irrelevant to the question of his having violated his clear and continuing duty to keep the board advised of an address where mail would reach him. *Gutknecht* affords no defense to the instant prosecution. United States v. Schwartz, 366 F.Supp. 443, 449 (E.D. Pa.1973). *See also*, United States v. Zmuda, 423 F.2d 757, 759 (3 Cir. 1970).

## CONCLUSION

The court finds beyond a reasonable doubt that the defendant, Eric Lincoln Seligson, knowingly failed to keep his local board advised of an address where mail would reach him. Accordingly, defendant's motion for a judgment of acquittal, Fed.R.Crim.P. 29, is denied and the defendant is found guilty on the one count of the indictment.

The foregoing constitute the court's findings of fact pursuant to Fed.R. Crim.P. 23.

So ordered.