**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Cullen SECOY, Defendant-
Appellant.**

**No. 72-2098.**

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1973.

Decided July 19, 1973.

Stephen K. Valentine, Jr., Court-appointed, Detroit, Mich., on brief, for defendant-appellant.

Kenneth J. Haber, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellee; Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief.

Before WEICK and PECK, Circuit Judges, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

Appellant was indicted in October 1971 on two counts of violating Title 50, U.S.C.A. App., § 462(a) [1], the Universal Military Training and Service Act: namely, (1) failing to report for induction, and (2) failing to keep his local draft board advised of his current address. Tried without a jury in June 1972, appellant was acquitted of count one and convicted on count two. This is a direct appeal from that conviction.

At the outset we note that Title 50, U.S.C.A. App., § 465(b), requires " . . . every registrant to keep his local board informed as to his current address . . . as required by such rules and regulations as may be prescribed by the President." Pursuant to

---

[1]. Title 50, U.S.C.A.App., § 462(a) provides in relevant part as follows:

"Any . . . person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451, 453–456 and 458–471 of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or

neglect to perform such duty . . . shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment. . . . "

this statutory authorization, two regulations have been promulgated which require registrants to inform their local boards of their whereabouts. 32 C.F.R. § 1641.3 applies to "mailing address" and provides:

"It shall be the duty of each registrant to keep his local board advised at all times of the address where mail will reach him. . . ."

32 C.F.R. § 1641.7(a) pertains to "home address" and provides:

"It shall be the duty of every classified registrant to keep his local board currently informed of his . . . home address . . . . Every classified registrant shall, within 10 days after it occurs, report to his local board in writing every change in such . . . home address. . . ."

The record does not indicate which regulation is the basis of this action. As the facts of this case will show, however, during the period of appellant's three-month sojourn, he did not maintain a home address and consequently it would have been impossible for him to inform his local board of such an address. And since the record does not reveal that a § 1641.7(a) violation was alleged, we will restrict our review to the application of § 1641.3.

The essential facts are as follows. Appellant registered with his local Selective Service Board in Pontiac, Michigan, giving a Pontiac mailing address. After being notified in June 1968 of his 1–A classification, appellant moved to 3202 Mission Boulevard in San Diego, California. In October 1968, he informed his Pontiac Board of this move and his May 1969 pre-induction physical was transferred to San Diego. Later, on August 8, 1969, the Board mailed him an order to report for a September 10, 1969, induction. It was sent to the Mission Boulevard address but was returned to the Pontiac Board on August 13, 1969, unopened and labelled "moved, no forwarding address." The Board then remailed the order to appellant's home address in Pontiac, Michigan. Upon receiving the induction order, appellant's parents, not knowing that appellant had left the Mission Boulevard address, sought to forward the induction order to that address. Inadvertently, the letter was returned to the Pontiac Board unopened without going to the Mission Boulevard address. The Board also mailed an inquiry to appellant's last known employer but the letter was incorrectly addressed and the employer never received it. In addition, the Board wrote to the person designated as the person always knowing appellant's address, but no reply was ever received by the Board and no follow-up action was instituted. The Board next heard from him on March 4, 1970, when he reported a change of address in San Diego and made a request for a form to submit a conscientious objector claim. Although he filed the necessary forms, he was denied this status in April 1970. In January 1971, the appellee filed these charges against the appellant.

In defense of himself, appellant propounded the following argument: that he left San Diego in the late summer or early fall of 1969 to travel through the west coast area of the United States, that he was gone for approximately three months, and that he asked his landlord to hold his mail for him until he returned. He also claims that he returned twice to San Diego during his sojourn, once for at least a week, and each time checked his mail without discovering the induction order.

The leading case construing the statute and regulation here applicable is Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943). In that case, Bartchy had been classified 1–A, had completed his final physical examination and had been notified of probable induction within 20–30 days. Six days after receiving this notice, Bartchy requested a deferment on the ground that he was employed by the Merchant Marine. In that request he noted a change of address to that of the National Maritime Union, which had agreed to forward his mail. Within a month after issuance of the classification, the Board sent an induction order

to Bartchy through the Union. However, the Union returned the order to the sender without notifying Bartchy. The Supreme Court found that Bartchy could have been more diligent by telephoning the Union at intervals but concluded that he justifiably relied on the procedures he had established. The Court stated:

"We think the Government correctly interprets the Act, Section 11, and the regulation, Section 641.3, not to require a registrant who is expecting a notice of induction to remain at one place or to notify the local board of every move or every address, even if the address be temporary. The Government makes the point, however, that a registrant with knowledge, as here, of the imminence of the posting of the notice 'is plainly obligated to keep in close communication with the forwarding address.' If this suggestion is meant as a rule of law that at his peril the registrant must at short intervals inquire at his last address given to the board, here 7543 Harrisburg Boulevard, Houston, or at his own forwarding address, here the Maritime Union in New York, we are of the view that the Government demands more than the regulation requires. *The regulation,* it seems to us, *is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance."* (Emphasis supplied.) 319 U.S. at 488–489, 63 S.Ct. at 1208.

Appellant contends that the Supreme Court, in the subsequent case of Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953), restricted the standard of *Bartchy* when it reversed a conviction on the basis that the record failed to support a finding of "deliberate purpose" to avoid the Selective Service laws. In that case, Ward had provided his local board, through its classification questionnaire, his revised employment address and his revised residence address. Subsequently, he moved from that residence address without notifying his board, relying instead on his employer's address which remained valid and at which he proved he did receive his mail. Apparently the board did not use the questionnaire response to update its records to reflect Ward's current employer's address. The board, however, did communicate with both Ward's former employer and the "person who would always know" his address, but was unable to discover a current address. Without discussing the facts, the Supreme Court held:

"*Per Curiam.* The indictment in this case charged that between the dates of March 30, 1951, and May 31, 1951, petitioner 'knowingly' failed to furnish his local Selective Service Board with a correct address where mail might be delivered to him. 50 U.S.C. App. Secs. 462(a), 465(b), 50 U.S.C.A. Appendix, §§ 462(a), 465(b); 32 C.F.R. Sec. 1641.3. The record does not support the charge that, during this period, there was deliberate purpose on the part of petitioner not to comply with the Selective Service Act or the regulation issued thereunder. Accordingly, the decision below is reversed." 344 U.S. at 924, 73 S.Ct. at 494.

We conclude that appellant's contention that *Ward* restricted the *Bartchy* standard is without merit. It seems clear that the record of the *Ward* case contained sufficient facts to show that a valid address had been provided. Further, the weight of case authority does not support the distinction the appellant proposes. See, e. g., United States v. Booth, 454 F.2d 318 (6th Cir. 1972); United States v. Read, 443 F.2d 842 (5th Cir. 1971); United States v. Ebey, 424 F.2d 376 (10th Cir. 1970); Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969).

■ Appellant also contends that there is not sufficient evidence to sustain his conviction. Viewing the evidence in the light most favorable to the Government together with all the infer-

ences that may be fairly drawn therefrom, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944), we conclude that sufficient evidence does exist.

Appellant testified that he waited for 3½ months after his May 21, 1969 physical examination for official notification of the results, whereupon he decided to "see the country" and left in "late summer or early fall" for a 3-month trip along the west coast. In this regard, we first acknowledge that appellant's Selective Service file indicates that he was mailed a notice on July 2, 1969 advising that he was acceptable for induction. Since the record does not specifically show any address to which the notice was sent, this fact can be given no more weight than that of a permissible inference. Cf. Flowers v. Aetna Casualty & Surety Co., 163 F.2d 411 (6th Cir. 1947). Secondly, it would appear that either the 3½ month waiting period from May 21, 1969, would overlap, or the "late summer or early fall" departure would be later than, the August 8–13 time period; that is, the period from the mailing of the notice to 3202 Mission Boulevard to the return of the unopened and unclaimed notice to the board. The record does not resolve the apparent conflict, nor does appellant's brief do so. In any event, assuming that appellant left before the notice arrived, a 3-month sojourn would suggest a return on or about November, 1969. The fact remains that appellant did not advise his board of a new address until March 1970, or 4 months later. We only observe that the circumstances of a 7-month incommunicado period when appellant was anticipating induction orders assume a different proportion than that of a 3-month sojourn, as appellant maintains.

In addition, although it is settled that a registrant is not required to remain at one place or report every move he makes to his board, United States v. Ebey, *supra* at 377, we note that despite the circumstances of expecting notice from his draft board, appel-

lant did not advise either his board, his parents or the person designated as the "person other than a member of his household who will always know his address" of his trip. Nor did he establish any alternate means of communication for this period. However, appellant claims he did ask his landlord to hold his mail while he was gone. The landlord was selected because, according to appellant, mail deliveries to all tenants of the building were made to the landlord who later slipped the mail under the respective tenant's door. Although the appellant did not maintain or pay rent on these quarters during this period of the sojourn, appellant testified that the proprietor agreed to hold the mail. There is no evidence that any mail was in fact held nor is there other evidence of such an agreement. We note that evidence either of instructions to hold mail or the actual holding of mail was found in the *Bartchy* and *Ward* cases. Such proof would seem to be particularly important here since the Board's letters to the Mission Boulevard address at best must have arrived almost immediately after appellant left that address.

Appellant also testified that he returned twice during his sojourn to, among other things, pick up his mail. During one return visit he claims he stayed in San Diego for about a week and on the other occasion he remained for a few days. There is no corroborating evidence of these facts and the specific dates are not indicated in the record. At best, the testimony reflects on the matter of the appellant's good faith and the weight to be given the testimony would have been a proper matter for the fact-finder to consider.

Viewing all the evidence in a light most favorable to the Government, we conclude that sufficient evidence does exist to conclude that appellant knowingly failed to furnish his local Selective Service Board with a "good" mailing address.

The judgment of the District Court is affirmed.