**UNITED STATES of America**

v.

**Patrick Ross YINGLING.**

**Crim. A. No. 73–275.**

United States District Court,
W. D. Pennsylvania.

Feb. 21, 1974.

David Curry, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Michael P. Malakoff, Pittsburgh, Pa., for defendant.

## OPINION AND DECREE

SNYDER, District Judge.

The Defendant, Patrick Ross Yingling, is charged in a one count indictment with a violation of 50 U.S.C. Appendix Section 462(a) [1] for failing "to keep his local board informed as to his current address and changes in status as required by such rules and regulations as may be prescribed by the President." (50 U.S.C. Appendix § 465(b)). Nu-

---

1. The relevant portions of 50 U.S.C. Appendix 462(a) are:

"Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty," * * * "shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment, . . . ."

merous Pre-trial Discovery Motions were filed by the Defendant together with a Motion to Dismiss. The Government turned over to the Defendant all of the relevant matters sought in his Discovery Motions and this Court on December 20, 1973 entered an Order denying the Defendant's Motion to Dismiss, D.C., 368 F.Supp. 379. This matter then came before this Court for a Non-Jury Trial and this Court adjudges the Defendant guilty as charged.

## FINDINGS OF FACT

1. The Defendant registered with Local Board No. 48 located at 19 South Third Street, Clearfield, Pennsylvania, on May 15, 1968, in conformity with his responsibilities under the Selective Service Act.

2. On his Registration Form, Defendant listed his address as R.D. #1, Box 82 (Burnside Township), Cherry Tree, Clearfield County, Pennsylvania 15724.

3. The Local Board sent to the Defendant his Classification Questionnaire on July 10, 1968; prior to this the Defendant on June 25, 1968 had sent a letter to Local Board No. 48 stating that a change of address had occurred and all relevent Selective Service matters should be sent to Room 401, Y.M.C.A., 201 East Church Street, Elmira, New York 14902. Evidently, the correction had not been made since the Classification Questionnaire was sent to the Cherry Tree address and returned to the Local Board unopened.

4. The Defendant by way of another letter received by the Local Board on July 29, 1968, again brought the change of address to their attention; the Local Board by way of a return letter acknowledged receipt of the Defendant's letter, took note of the change of address and sent another Classification Questionnaire to the Elmira address to be filled out by the Defendant.

5. The Defendant completed and returned his Classification Questionnaire; it was received by Local Board No. 48 on August 2, 1968. On his Questionnaire the Defendant listed his current mailing address as Central Y.M.C.A., Elmira, New York 14902.

6. In completing his Classification Questionnaire, the Defendant on Page 6 wrote the following:

"I begin college as a freshman at PSU on Sept. 15, 1968. At that time I shall have the student deferment form sent to you and *will also notify you of a change in address.* (Emphasis supplied)

7. On July 18, 1969, the Defendant was sent an order to report for a physical examination; this was returned to the Local Board on July 24, 1969 with the handwritten statement "not at Y.M.C.A."

8. A later notice was then sent to the Cherry Tree address; it was returned by the Defendant's Father on August 11, 1969. He told the Local Board that he did not know where his son was and gave two pictures of his son to the Local Board if his son would be turned over to the F.B.I.

9. The Local Board then declared the Defendant delinquent and a Delinquency Notice for failing to report for his Armed Forces physical examination was sent to the Elmira address. This was returned to the Local Board on September 10, 1969 "unclaimed" at the Y.M.C.A.

10. Correspondence with the Defendant's last known employer proved to be fruitless in attempting to find an address for the Defendant. The Local Board and the F.B.I. contacted Mr. Oaks; the Defendant listed Mr. Oaks as someone outside of his family who would know his whereabouts. He did not know an address for the Defendant.

11. On March 5, 1970, the Local Board removed the Defendant's delinquency; this letter, as the procedural requirement set forth, was mailed to the Defendant's last known address, i. e., the Elmira, New York address. It was returned to the Local Board on March 12, 1970 marked "Moved-Address Unknown". On March 24, 1970, the De-

fendant was ordered to report for induction on April 16, 1970; this he failed to do. The notice to report for induction was mailed to the Cherry Tree, Pennsylvania address.

12. A member of the Postal Service explained the procedure of the Post Office in returning letters to the senders when a stamp such as those that were on the correspondence sent to the Defendant at the Elmira address is placed on any envelope sent in the mail. The letters from the Local Board sent to the Elmira address were returned to the sender since the carrier was unable to effect his delivery. This occurred once again on the letter mailed March 6, 1970, even though two different attempts were made to effectuate delivery at two different addresses, i. e., the Y. M.C.A. in Elmira, New York and the 356 W. Water Street address. In making deliveries to a public facility such as the Y.M.C.A. or a hotel, the carrier would leave the mail in the Postal Box owned by the facility, then a representative of the Y.M.C.A. would make the determination as to whether the addressee is there or not. On the March 6, 1970 letter, the postal carrier attempting delivery endorsed the front of the envelope to the fact that the addressee had moved and his address was unknown, therefore, he could not effectuate delivery either at the Y.M.C.A. or the W. Water Street address, and the letter would be returned to the sender.

13. The F.B.I. made numerous unsuccessful attempts from 1970 until 1973 to contact the Defendant through his mother, people in the Cherry Tree area, and the Y.M.C.A. in Elmira, New York.

14. On May 2, 1973, a Richard A. Clark was arrested in Anchorage, Alaska for a motor vehicle violation. A Special Agent in the Anchorage area had received information the Defendant might be in the area and a check of the fingerprints of Richard A. Clark was found to coincide with those of Patrick Ross Yingling.

15. When the Agent went to the address furnished by Richard Clark, the Defendant admitted his identity, stated that a Bench Warrant had been issued for him for a violation of the Selective Service Act and that he had intended to turn himself in at the end of the summer.

■ 16. From the testimony offered at the Non-Jury Trial and the Exhibits admitted into evidence, this Court finds that the Defendant knowingly and with the requisite intent failed to fulfill his duty under the Selective Service Act to keep his draft board informed of his current address and failed to report any and/or all address changes from the March 12, 1970 date as set forth in the indictment.

## DISCUSSION

■ The critical element in the crime charged against this Defendant is that he knowingly and wilfully failed to keep his Local Board informed as to his current address. The facts show that the Defendant did comply with the Selective Service Law by registering when he reached his eighteenth birthday and by informing them of his new address in Elmira, New York. The law is well established that a registrant is not required to remain at one place or report every move he makes to his Local Board. United States v. Secoy, 481 F.2d 225 (6th Cir. 1973). If a registrant fails to furnish the Draft Board with a home address, it does not constitute a violation of the regulation requiring a registrant to keep his Local Board advised of an address where mail will reach him; his obligation is met if he provides a suitable means for being reached by his Local Board. United States v. Chudy, 474 F.2d 1069 (9th Cir. 1973); United States v. Burton, 472 F. 2d 757 (8th Cir. 1973). A registrant cannot be convicted because of mere mistake, accident or other innocent reason. United States v. Neilson, 471 F.2d 905 (9th Cir. 1973).

■ A question of vital importance is whether the communications mailed to the various addresses furnished by the registrant or his family would have reached him in time for compliance with the Selective Service Act. United States v. Ebey, 424 F.2d 376 (10th Cir. 1970).

■ To convict a registrant of knowingly and wilfully failing to keep his Local Board advised of his address it is necessary to show that there is a deliberate purpose on his part not to comply with the Selective Service Act or any regulation issued thereunder. United States v. Reeves, 325 F.Supp. 179 (D.C. Fla.1971). See also United States v. Rabb, 394 F.2d 230 (3rd Cir. 1968) on the issue of intent. Certainly, substantial compliance with the requirement that a registrant advise the Local Board of his current address where mail can reach him is not met by merely giving the Board a few clues by which the registrant can be located. United States v. Mostafavi-Kashani, 469 F.2d 224 (9th Cir. 1972).

In United States v. Secoy, *supra,* the Sixth Circuit held that the evidence sustained the conviction of a defendant who did not advise either his Local Board, his parents, or the person designated as the "person other than a member of his household who will always know his address", of his three month trip through the West Coast of the United States, and who did not establish any alternate means of communication for this period, for failing to keep his Local Board advised of his current address notwithstanding the defendant's claims that he had asked his landlord to hold his mail while he was gone and his testimony that he returned twice during his sojourn to pick up his mail. In Gretter v. United States, 422 F.2d 315 (10th Cir. 1970), the Court held that where the defendant left his parent's home without informing anyone of his new address where mail could reach him, where the Board made unsuccessful attempts to discover his new address after classifying defendant as a delinquent registrant

and defendant communicated with the Board only after he was found by the F.B.I., defendant had the requisite intent to commit the offense of failure to advise his local draft board of an address where mail would reach him.

■ This Defendant's duty to advise the Local Board of an address where mail could always reach him was a continuing one and he could properly be convicted of knowingly failing to so advise his Local Board though the indictment charged Defendant with failure to notify the Board of address changes from January 17, 1968 to July 1970, and the Board sent him nothing during that period apparently because its attempts to reach him in December of 1967 had been futile. United States v. Buckley, 452 F.2d 1088 (9th Cir. 1971). Relying on the law as set forth in the *Secoy, Gretter* and *Buckley* cases, this Court concludes that the Defendant is guilty beyond a reasonable doubt of the violation charged.

In United States v. Mostafavi-Kashani, *supra,* the Court stated:

"The evidence amply sustained the district court's conclusion that appellant's failure to keep his board informed of his current address was deliberate. The pattern of appellant's conduct gave every indication of evasive tactics to avoid receiving mail from the board. The record [as is here] is unlike Ward v. United States (1953) 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711. In *Ward* the registrant furnished his board with his employer's complete address, and the evidence showed that he received mail at that address. No similar showing was made in this case."

## CONCLUSIONS OF LAW

We think that the evidence amply sustains a finding that the Defendant deliberately and knowingly failed to supply his Local Board with his current address and adjudge him guilty beyond a reasonable doubt as charged.

Defendant filed a Motion for Judgment of Acquittal and raised the following six reasons in support of his Motion.

1. The Government failed to prove Defendant violated his duty to keep his local board advised of the address where mail will reach him.

2. The Government failed to prove Defendant wilfully and knowingly violated his duty to keep his local board advised of the address where mail will reach him.

3. The Government failed to prove Defendant wilfully and knowingly violated his duty to keep his local board advised of the address where mail would reach him on or about March 12, 1970.

4. The Government failed to prove that Defendant violated the Military Selective Service Act, 50 U.S.C. App. § 462(a) as charged.

5. Defendant is a victim of selective, intentional, and discriminatory prosecution in violation of his right to equal protection of the law.

6. Defendant was denied equal protection of the law in that the Military Selective Service Act of 1967 as amended, required only males, not females, to keep the local board informed of their address where mail will reach them.

This Court previously considered the statements contained in Points 5 and 6 in our Opinion and Order denying the Defendant's Motion to Dismiss the Indictment and we, therefore, do not feel there is any reason to discuss these Points further in this Opinion.

 The first four Points on which the Defendant's Motion is based are (like Points 5 and 6) without any legal merit. Relying on the case law as set forth in the Court's Discussion, and the Facts as set forth by the Court, we can only conclude that the requisite intent to evade his duty under the Selective Service Act was present. The Defendant on two prior occasions wrote to the Local Board and in writing stated that he knew of his duty to keep the Local Board aware of his present address;

this he did when he first moved to Elmira, New York. However, after the Y.M.C.A. address no further change of address was reported to the Local Board.

Although there was an address of 356 W. Water Street, Elmira, New York, listed on the letter returned March 12, 1970 and this address was also the one supplied by the Defendant's employer, the Defendant *never* received his mail at that address. If that forwarding address would have resulted in Defendant's ability to comply with the Orders of the Local Board, and Defendant would, in fact, have complied, he very well may not have been charged with the present charge in this indictment. However such was not the case. The Defendant wilfully failed in his responsibilities to notify the Local Board of his address; he did not tell his parents or the person listed on his Questionnaire as the individual who would know of his whereabouts, where he was. These circumstances plus the facts concerning his arrest leave us without any doubt that his failure in his obligation to the Local Board was not due to "mere mistake, accident or other innocent reason" but was intentional.

The Defendant relied on the case of United States v. Figurell, 462 F.2d 1080 (3rd Cir. 1972). In that case the defendant was charged with failure to notify his Local Board of a fact that might have affected his draft status. The indictment charged that Figurell knew, on or about January 12, 1967, that he had a duty to report to the Local Board the fact that he was not living with his wife and children and that he knowingly and wilfully failed to report the above within the prescribed ten day period. The District Court adjudged the defendant guilty; he based his conclusion largely on the circumstantial evidence that the defendant had a good record of reporting to his Local Board information which was favorable to his III–A deferment status and the delivery of a forged letter to the Local Board on May 25, 1967. The letter allegedly was written by the defendant's wife and in it

she stated that they were again living together. To prove the charge in the indictment, it was necessary for the Government to prove (1) that the defendant failed to report to his Local Board the fact that he was no longer living with his wife and children, and (2) that the Defendant knew of his duty and intended not to perform it.

In reversing the judgment of the District Court, the Third Circuit found the evidence insufficient to sustain the judgment of guilty beyond a reasonable doubt. The Court also held that where the indictment charged the defendant with a violation only for the period on or about January 12, 1967, conviction for a breach of his duty in some period later than a week or two beyond January 12, 1967 would constitute an impermissible constructive amendment of the indictment.

After carefully reading and analyzing that case this Court finds the facts in *Figurell* can easily be distinguished from the present case and, therefore, the principles set forth therein are inapplicable to the present case. The evidence as set forth in our Findings of Fact clearly establish beyond a reasonable doubt that the Defendant knew of his responsibility and that he wilfully and deliberately failed in his obligation to keep his Local Board informed of his current address. The March 12, 1970 date charged in this indictment did not constitute an impermissible constructive amendment since this was the date that the Notice of Removal of the Defendant from the Local Board's Delinquency List was returned to the Local Board for the reason that the addressee was unknown.

The Defendant also objected to the admission of various documents including the Defendant's Selective Service File and the letter sent out March 6, 1970. This objection is without any legal merit, and the admission of these documents did not violate any Constitutional right of the Defendant. The documents were properly authenticated and their admissibility did not violate any rule of evidence.

An appropriate order will be entered.