UNITED STATES of America,
Plaintiff-Appellee,

v.

Cletus Lester DAVIS, Defendant-
Appellant.

No. 74–1130.

United States Court of Appeals,
Sixth Circuit.

Nov. 8, 1974.

Frederick J. McGavran, Kyte, Conlan, Wulsin & Vogeler, Cincinnati, Ohio (Court-appointed), for defendant-appellant.

William W. Milligan, U. S. Atty., Byron E. Trapp, John J. Cruze, Cincinnati, Ohio, for plaintiff-appellee.

Before CELEBREZZE and MILLER, Circuit Judges, and GRAY,* District Judge.

FRANK GRAY, Jr., District Judge.

The appellant in this case was charged in a three-count indictment with wilfully and knowingly failing to perform a duty required of him under the Military Selective Service Act of 1967 and the rules, regulations, and directions promulgated thereunder, in violation of 50 U.S.C. Appendix § 462(a). In Count One, he was charged with failing to comply, on December 10, 1970, with an order of his local draft board to report for an Armed Forces physical examination; in Count Two, with failing to comply, on or about December 10, 1970, with an order of his local board to keep the board advised of his current address; and, in Count Three, with failing to comply, on February 3, 1971, with an order of his local board to report for induction into the Armed Forces of the United States.

At his jury trial in the District Court, the appellant moved for a judgment of acquittal on all three counts at the close of the Government's case. The Trial Court granted the motion as to Counts One and Three, holding that these were inconsistent with the offense charged in Count Two. The motion as to Count Two was denied, and, following the appellant's election not to offer any evidence, the charge of failing to keep the board advised of a current address was submitted to the jury. The jury returned a verdict of guilty, and the appellant seeks review of that conviction.[1]

The principal issue for review is whether the evidence adduced at trial is sufficient to sustain the appellant's conviction. The evidence to be considered comes to the Court by agreement of the parties pursuant to Rule 10(d) of the Federal Rules of Appellate Procedure. It consists almost exclusively of documents from the appellant's Selective Service file, authenticated by the Secretary of Local Draft Board Number 311.[2] These documents are: (1) the Minutes of actions by the Local Board (merely a chronological listing of the actions taken by the Board with respect to Appellant); (2) a Report of Information (SSS Form 119), dated September 16, 1970, concerning the appellant; (3) a Current Information Questionnaire (SSS Form 127) filled out by the appellant on September 16, 1970; (4) a Report of Information, dated September 23, 1970, concerning the appellant; and (5) three envelopes with letters mailed by the board to the appellant in care of his mother, which show respective mailing dates of September 18, 1970, November 18, 1970, and January 18, 1970, and which were returned by the Post Office, respectively on September 23, 1970, November 30, 1970, and January 12, 1970. The contents of these documents, i. e., the facts presented to the jury on the charge in question, are set forth below

---

* The Honorable Frank Gray, Jr., Chief Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

1. Following the verdict, appellant renewed his motion and it was denied.

2. The only other evidence presented was the testimony of an FBI Agent that he had arrested the appellant in Los Angeles, California, on April 10, 1973. This arrest is so remote in time to the date specified in the indictment as to be without probative value and, therefore, will not be considered further.

in narrative form and in chronological sequence, commencing with July 29, 1970.

The board's Minutes reflect that an Order to Report for Physical Examination (SSS Form 223) was mailed to the appellant on July 29, 1970. The next entry on the Minutes shows that the "SSS Form 223 [was] returned by [the] Post Office on July 31, 1970." A notation presumably relating to this return was excluded as hearsay by the Trial Court.[3] On August 4, 1970, the Order to Report for Physical Examination was re-mailed to Appellant, in care of his mother's address, 8942 Applewood (Cincinnati, Ohio).[4] The succeeding entry, dated August 11, 1970, is "SSS Form 223 returned by Post Office." It is likewise followed by a notation that was excluded as hearsay by the Trial Court. This entry is followed by one dated September 2, 1970, indicating a Report of Information (SSS Form 119) was received by the board which, according to an additional notation, was the report of a call to the registrant's (appellant's) phone number. A further entry under the same date was crossed out.[5]

The next entry on the Minutes of the board, dated September 16, 1970, and indicating receipt of SSS Form 129, is supplemented by documents that are before the Court, the September 16th Report of Information (SSS Form 119) and Current Information Questionnaire (SSS Form 127) of the same date, both of which are mentioned *supra*. The Report of Information form, filled out by someone at the board, discloses that the appellant called the board on September 16th, said that he had been out of town

and had been told to contact the board. After being told he had been ordered to report for a physical examination and had not so reported, he informed the board that he would ". . . come down and talk to [them] on 9/17/70." Instead, as the date on the Current Information Questionnaire shows, he went to the board office on the 16th and completed the questionnaire. The information on that form shows, *inter alia*, that the appellant gave his "current mailing address" as 8942 Applewood (in care of his mother, Doris Petering), listed Mrs. Helen Stusman (791–7829) as a "person other than a member of your household who will always know your address," noted his divorce, and listed his employer, from September 4, 1970, as "Natorp (Ken Hartman)."[6] (Appellant's entry in the "Education" section shows he completed the ninth grade.)

Within two days, the board mailed Appellant the first of the aforementioned three letters contained in the appellate record, an Order to Report for Physical Examination (on October 12, 1970) which was mailed to the appellant in care of his mother at 8942 Applewood. The board's Minutes reflect this mailing and, by entry dated September 23, 1970, evidences the return by the Post Office of the form (which is shown by the letter and envelope to be the order mailed on the 18th). The additional entry on that date was excluded as hearsay, as were certain markings or entries on the envelope in question. The face of this envelope shows, in addition to the typed Applewood address, the handwritten address, "4927 Myrtle Ave., 45242," as well as a "Return to Sender"

---

3. In the record before the Court, those portions which were excluded by the Trial Court are either crossed out or taped over.

4. From the briefs filed herein, the Court is informed that the appellant, in April of 1969, had listed his current address as 4315 Kugler Mill, Cincinnati, and gave his phone number as 791–7829 and that, subsequently, he had given the board his address as 4927 Myrtle Avenue, Cincinnati. These facts, however, do not appear in the record submitted by the parties.

5. We are told in the brief submitted by counsel for the appellant that this call was made to phone number 791–7829 and that the results of that call were excluded by the Trial Court as hearsay. Again, this does not appear in the appellate record.

6. The entry on the Minutes is. "Divorced Unemployed." This was obviously an error, since a reasonable interpretation of the completed questionnaire indicates that Appellant was employed.

Post Office stamp and the local board's receipt stamp, dated September 23, 1970.

The next entry in the Minutes shows the September 23, 1970, receipt of another Report of Information, accompanied by the notation, "Contacted family—employer—friend for forwarding address," with the remainder marked out, or excluded as hearsay. The Report of Information form of the same date, mentioned *supra* contains, in pertinent part, the following:

"Called Mrs. Stusman 791–7829

"Called mother's house:

"Called Natorp:

"Mr. Hartman called:"

After each of the entries is a notation which was excluded by the Trial Court as hearsay and is therefore covered with tape. The entry on the Minutes of September 24, 1970, is that memo forms were sent to friends[7] asking for a forwarding address. (There is no further entry in the Minutes concerning the fate of these "memo forms.")

The second letter before the Court and the corresponding entry on the Minutes show that another Order to Report for Physical Examination was mailed to the appellant on November 18, 1970, in care of the address on Applewood.[8] This letter was sent by Certified Mail and, as evidenced by the board's stamp appearing on the envelope and the corresponding entry on the Minutes, was returned by the Post Office on November 30, 1970. A notation on the envelope and another in the Minutes likewise were excluded by the Trial Court.

An entry in the Minutes under the date, December 17, 1970, was excluded *in toto* at trial and is marked out.

The final relevant entries on the Minutes revolve about the date January 18, 1971. The first is "SSS Form 119 completed." The briefs submitted by both sides contain the additional fact this form reported that calls were made to Kelch and Saylor, but that the responses to these calls were excluded by the District Judge as hearsay. The second entry for January 18, 1971, and the third letter presented to this Court reflect that an Order to Report for Induction (SSS Form 252) was mailed, on January 18, 1971, to the appellant at the Applewood address in Cincinnati. The last entry shows that this letter was returned to the board by the Post Office on January 21, 1971; the accompanying notation was excluded by the court. The envelope itself bears two taped-over portions, a "Return to Sender" Post Office stamp, and the local board's receipt stamp, dated January 21, 1971.

The precise issue before the Court, therefore, is whether the foregoing evidence, viewed in the light most favorable to the Government together with all the inferences that may be fairly drawn, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1944), is sufficient to sustain, on appeal, the appellant's conviction for wilfully and knowingly failing to keep the local board advised of his current address.

As a preliminary consideration, it should be noted that, although two Selective Service regulations could possibly be applicable in a case of this genre, we are of the opinion that the language of the indictment and the Government's treatment of the charge on appeal, compel the conclusion that only one of the two, 32 CFR § 1641.3, is applicable.[9]

---

7. Counsel for the appellant, in his brief, informs us that these "friends" were Messrs. Kelch and Saylor whose names were furnished by the appellant in 1969.

8. Apparently, the order set December 10, 1970, as the date for the examination and, presumably, this is the source of the date charged in the indictment.

9. The other section, Section 1641.7(a), pertains to the duty to currently inform the local board of a "home address" and report to the board in writing every change in home address within ten (10) days of its occurrence. Inasmuch as the section is obviously inapplicable in this case, we need not reach the legality of its application in these circumstances.

See United States v. Secoy, 481 F.2d 225 at 226 (6th Cir. 1973). Section 1641.3 imposes a duty on a registrant to keep the board advised at all times of an address where mail will reach him. Thus, this regulation and the judicial interpretation of its requirements provide one of the standards against which the facts at bar must be measured. The most quoted articulation of this standard is found in the following passage from the Supreme Court's opinion in the case of Bartchy v. United States, 319 U.S. 484, at pp. 488–489, 63 S.Ct. 1206, at p. 1208, 87 L.Ed. 1534 (1943):

"We think the Government correctly interprets the Act, section 11, and the regulation, section 641.3, not to require a registrant who is expecting a notice of induction to remain at one place or to notify the local board of every move or every address, even if the address be temporary. The Government makes the point, however, that a registrant with knowledge, as here, of the imminence of the posting of the notice is 'plainly obligated to keep in close communication with the forwarding address.' If this suggestion is meant as a rule of law that at his peril the registrant must at short intervals inquire at his last address given to the board, . . . , or at his own forwarding address, . . . , we are of the view that the Government demands more than the regulation requires. The regulation, it seems to us, is satisfied when the registrant, in good faith, provides a chain of forwarding addresses by which mail, sent to the address which is furnished the board, may be by the registrant reasonably expected to come into his hands in time for compliance."

In abbreviated form, this has been denoted the "good address" requirement.

Kokotan v. United States, 408 F.2d 1134 (10th Cir. 1969).

■ Attendant to this standard is the requirement that the local board be shown to have attempted contact with the registrant through persons such as family, friends, or employers, whose names have been furnished by the registrant. 32 CFR § 1642.41(b); United States v. Burton, 472 F.2d 757 (8th Cir. 1973), *cf.* Ward v. United States, 344 U.S. 924, 73 S.Ct. 494, 97 L.Ed. 711 (1953); Venus v. United States, 287 F. 2d 304 (9th Cir. 1961), reversed 368 U. S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341.

■■ In addition to proving that a defendant confronted with the charge *sub judice* failed to provide the board with a "good" address, the Government must prove that such failure was a "willful and knowing" failure, as charged in the indictment. In other words, the Government must prove intent, and, under the applicable decisions, this means proving "deliberate purpose" not to comply with the Act and regulations. United States v. Ward, *supra.* As this Court recognized in United States v. Booth, 454 F.2d 318 at 322 (6th Cir. 1972), this intent requirement, e. g., "evidence of bad faith and an affirmative endeavor to avoid delivery of the notice," was also implicit in the *Bartchy* decision; and, although it has been pointed out that the facts in both *Ward* and *Bartchy* would support a finding in those cases that a good address had in fact been given (*See*: United States v. Secoy, *supra,* 481 F.2d at p. 227), subsequent decisions have cited, and have purported to follow, *Ward* and *Bartchy* in requiring evidence of intent.[10] *See*: Venus v. United States, *supra*; United States v. Booth, *supra*; Gretter v. United States, 422 F.

10. We do not read our decision in United States v. Secoy as being in conflict with this view. While in *Secoy* this Court rejected a contention that *Ward* had restricted the *Bartchy* standard, the authority cited therein by the Court indicates that it was not vitiating the intent requirement, but merely rejecting a suggestion that *Bartchy's* interpretation of Section 1641.3 had not been restricted by *Ward*, a view with which we are in accord.

2d 315 (10th Cir. 1970); United States v. Read, 443 F.2d 842 (5th Cir. 1971).

It follows, then, that the sufficiency of the evidence at bar must be measured against a two-pronged standard: (1) the failure to provide the board with a "good" address at the time in question; (2) a "deliberate purpose" or "bad faith" on the part of the appellant in so failing.

■ Turning to an analysis of the evidence in this case, we find that it is limited to the appellant's appearance at the local board office on September 16, 1970, and three sets of actions by the local board subsequent thereto. When the appellant appeared at the board offices, he completed a Current Information Questionnaire in which he listed his current address as 8942 Applewood, the name and phone number of one who would always know his whereabouts (Mrs. Stusman, 791–7829), his mother's address (the same as his current address), and his employer (with the name of a man to contact there). It is to be noted that this information was in addition to information he had furnished the board on previous occasions.

Within two days of this visit, the board mailed appellant the first of a series of three letters, all to the 8942 Applewood address. The other letters were mailed on the eighteenth days of November and January, respectively. These letters show only that the board mailed letters to the appellant at that address, but do not show why they were returned. Consequently, the jury could only guess as to why, among several possible reasons, they were returned to the board.

In short, these returned letters, by themselves, do not show that a proper address had not been furnished the board; and, even if an inference in the

Government's favor were permitted here, we could scarcely conclude that this inference, without more, is sufficient to establish a necessary element in a criminal charge.[11]

Second, the evidence shows that the board made calls to those persons listed on the appellant's Current Information Questionnaire of September 16, 1970. On September 23, 1970, someone at the board called Mrs. Stusman's number, the house of the appellant's mother, and his employer, Natorp. There is no evidence, however, as to the results of these calls, except that it appears that Mr. Hartman (of Natorp) returned the board's call. The evidence simply does not show whether the first three persons were actually contacted, whether they advised the caller of the appellant's whereabouts, whether they claimed no knowledge of his whereabouts, or whether they refused to give the board any information at all. The answers to these questions are merely left to the jury's imagination and, therefore, show neither that the appellant failed to provide the board with a good address through which he could have been contacted nor that the board fulfilled its duty to satisfy the "alternate address" requirement.

Finally, the record shows that "memo forms" were mailed to "friends." Briefs of both parties agree that these "friends" were Kelch and Saylor. The response, if any, to such memos is not in the record. Both parties also agree that the naked entry on January 18, 1971, that "SSS Form 119 completed" was made to show that telephone calls were made to Kelch and Saylor. The results are also not in the record, having been excluded as hearsay; thus none of this information has probative value.

■ The foregoing being all of the relevant evidence, we find, therefore,

---

11. Note the distinction between the presumption that a letter properly stamped and mailed is delivered in due course, Flowers v. Aetna Casualty & Surety Co., 163 F.2d 411, 416 (6th Cir. 1947), and a presumption that a properly stamped and mailed letter is re-

turned by the Post Office because the addressee cannot be reached at the address on the letter. Also, note the distinction as to the burden of proof between criminal and civil cases.

that the Government's proof failed to establish the first of the two standards to be met. Even if we were to find that the proof showed the appellant's failure to satisfy the *Bartchy* criterion, which we cannot, it is impossible to conclude the evidence is sufficient to show that the alternate addresses given the board were not satisfactory or that the board met its duty to pursue the appellant through these addresses. Whether the appellant could have been contacted in time for compliance through the names and addresses he furnished the board is a factual issue upon which the jury could only speculate,[12] and a criminal conviction based solely on this quantum of proof cannot stand. Given the insufficiency of the evidence as to the appellant's alleged failure to provide a good address, it necessarily follows that such evidence cannot be deemed adequate to show that the appellant acted knowingly and wilfully.

These conclusions are further supported by the applicable case law. The Court's research and the briefs of the parties have disclosed a number of cases dealing with the sufficiency of evidence to sustain a conviction for failure to keep the local board advised of a current address. Without reciting the facts found and rulings made in these cases, we find it sufficient here to note that, in those cases where the evidence was held to be sufficient, there were critical facts and factors present which are absent here, such as explanations as to why letters were returned, the whereabouts of the defendant during the period specified, the statements or testimony of persons contacted by the board, and/or the testimony of the accused himself, from which the factfinder could legiti-

mately draw inferences to support a finding of guilt, United States v. Booth, *supra;* United States v. Secoy, *supra;* United States v. Kokotan, *supra;* United States v. Gretter, *supra;* and, in most of the cases where convictions were reversed for insufficiency of evidence, the evidence to sustain a conviction was more substantial than that which is present here. United States v. Jackson, 469 F.2d 267 (9th Cir. 1972); United States v. Ebey, 424 F.2d 376 (10th Cir. 1970); United States v. Chudy, 474 F.2d 1069 (9th Cir. 1973); Venus v. United States, *supra;* Bartchy v. United States, *supra,* 319 U.S. p. 490, 63 S.Ct. 1206, dissenting opinion. A comparison of these decisions suggests that there is no authority under which this Court could sustain the instant conviction.

The foregoing decisions do indicate, however, that the failure here, perhaps, was in the proof adduced at trial and not in the proof marshaled by the local board. If the Government had substantiated its case so as to avoid the hearsay exclusion of notations on the letters and the results of the phone calls, e. g., had the Government offered proof tending to show the reasons why the board was not able to contact the appellant, its case would have taken on an entirely different light. In short, it would appear that the Government simply failed to make admissible evidence which apparently was available and which could have sustained the conviction. On this record, however, we hold that the Trial Court erred in denying defendant's motion for judgment of acquittal. Accordingly, it is directed that such a judgment be entered.

Reversed with directions.

12. In this regard, it is to be noted that the calls to Mrs. Stusman, the appellant's house, and Natorp were made on September 23, 1970, almost three months before the date specified in the indictment, December 10, 1970; and, while the Court cannot accept the appellant's argument that the proof should have been restricted to within a few days of December 10th, Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162 (1898); United States v. Kokotan, *supra,* the Court is of the opinion that the time lapse does bear on the issue of the weight and sufficiency of the evidence, particularly on the question of whether the appellant failed to provide the board with an address where he could be reached. So considered, the already sparse evidence is further weakened.